1  **William K. Hanagami, SBN 119832**
**THE HANAGAMI LAW FIRM**
2  **A PROFESSIONAL CORPORATION**
**21700 OXNARD STREET, SUITE 1150**
3  **WOODLAND HILLS, CA 91367-7572**
**(818) 716-8570 / (818) 716-8569** *FAX*
4  BillHanagami@esquire.la

5  Abram J. Zinberg, SBN 143399
**THE ZINBERG LAW FIRM**
6  **A PROFESSIONAL CORPORATION**
**412 OLIVE AVENUE, SUITE 528**
7  **HUNTINGTON BEACH 92648**
**(714) 374-9802 / (714) 969-0910** *FAX*
8  AbramZinberg@gmail.com

9  Attorneys for Plaintiff and Qui Tam Relator

10

11  UNITED STATES DISTRICT COURT

12  CENTRAL DISTRICT OF CALIFORNIA

13

14  | UNITED STATES OF AMERICA [UNDER SEAL], | CASE NO.: CV12-8797 MMM(PLAx) |
15  | | |
16  | Plaintiffs, | SECOND AMENDED COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT [UNDER SEAL] |
17  | vs. | |
18  | [UNDER SEAL], | |
19  | Defendants. | **[UNDER SEAL** PER 31 U.S.C. § 3730(b)(2)] |

20

21

22  [UNDER SEAL]

23

24

25

26

27

28

William K. Hanagami, SBN 119832
THE HANAGAMI LAW FIRM
A PROFESSIONAL CORPORATION
21700 OXNARD STREET, SUITE 1150
WOODLAND HILLS, CA 91367-7572
(818) 716-8570 / (818) 716-8569 FAX
BillHanagami@esquire.la

Abram J. Zinberg, SBN 143399
THE ZINBERG LAW FIRM
A PROFESSIONAL CORPORATION
412 OLIVE AVENUE, SUITE 528
HUNTINGTON BEACH, CA 92648
(714) 374-9802 / (714) 969-0910 FAX
AbramZinberg@gmail.com

Attorneys for Plaintiff and Qui Tam Relator,
Stuart Finkelstein, M.D.



FILED
CLERK, U.S. DISTRICT COURT

JAN 1 4 2014

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATES OF CALIFORNIA, NEW YORK, NEW JERSEY, FLORIDA, TEXAS, MICHIGAN, MASSACHUSETTS, MARYLAND and ILLINOIS, *ex rel* STUART FINKELSTEIN, M.D., <br><br> Plaintiffs, <br><br> vs. <br><br> RECKITT BENCKISER PHARMACEUTICALS, INC., a Delaware corporation, RECKITT BENCKISER (USA), INC., a Delaware corporation, and MONOSOL RX, LLC, a Delaware corporation, <br><br> Defendants. | CASE NO.: CV12-8797 MMM(PLAx) <br><br> SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT, CALIFORNIA FALSE CLAIMS ACT, NEW YORK FALSE CLAIMS ACT, NEW JERSEY FALSE CLAIMS ACT, FLORIDA FALSE CLAIMS ACT, TEXAS FALSE CLAIMS ACT, MICHIGAN FALSE CLAIMS ACT, MASSACHUSETTS FALSE CLAIMS ACT, MARYLAND FALSE CLAIMS ACT, ILLINOIS FALSE CLAIMS ACT; REQUEST FOR JURY TRIAL <br><br> [UNDER SEAL PER 31 U.S.C. § 3730(b)(2)] |

COMES NOW, Plaintiff and Qui Tam Relator Stuart Finkelstein, M.D., individually and on behalf of the United States of America and the States of California, New York, New Jersey, Florida, Texas, Michigan, Massachusetts, Maryland and Illinois, and alleges as follows:

///

-1-

## JURISDICTION AND VENUE

1.     Plaintiff and Qui Tam Relator Stuart Finkelstein, M.D. (Relator) files this action on behalf and in the name of the United States Government ("Government") seeking damages and civil penalties against the defendants for violations of 31 U.S.C. § 3729(a). Relator also files this action on behalf and in the name of the States of California, New York, New Jersey, Florida, Texas, Michigan, Massachusetts, Maryland and Illinois (collectively, "Certain States") seeking damages and civil penalties against the defendants for violations of California Government Code § 12651(a), New York State Finance Law § 189(1), New Jersey Statutes Annotated § 2A:32C-3, Florida Statutes § 68.082(2), Texas Human Resources Code § 36.002, Michigan Comp. Laws §§ 400.603 and 400.607, Massachusetts General Laws Chapter 12, §§ 5B, Maryland Code, Health General § 2-602(a), and 740 Illinois Comp. Stat. § 175/3, respectively.

2.     This Court's jurisdiction over the claims for violations of 31 U.S.C. § 3729(a) is based upon 31 U.S.C. § 3732(a). This Court's jurisdiction over the claims for violations of California Government Code § 12651(a), New York State Finance Law § 189(1), New Jersey Statutes Annotated § 2A:32C-3, Florida Statutes § 68.082(2), Texas Human Resources Code § 36.002, Michigan Comp. Laws §§ 400.603 and 400.607, Massachusetts General Laws Chapter 12, §§ 5B, Maryland Code, Health General § 2-602(a), and 740 Illinois Comp. Stat. § 175/3 is based upon 31 U.S.C. § 3732(b).

3.     Venue is vested in this Court under 31 U.S.C. § 3732(a) because at least one of the defendants transacts business in the Central District of California and many acts constituting violations of 31 U.S.C. § 3729(a) occurred in the Central District of California.

## THE PARTIES

4.     Relator is a resident and citizen of the United States, the State of California, and of this District. Relator brings this action of behalf of the Government under 31 U.S.C. § 3730(b) and on behalf of the States of California, New York, New Jersey, Florida, Texas, Michigan, Massachusetts, Maryland and Illinois under California Government Code 12652(c), New York State Finance Law § 190(2), New Jersey Statutes Annotated § 2A:32C-5, Florida

-2-

1  Statutes § 68.083, <u>Texas Human Resources Code</u> § 36.101(a), <u>Michigan Comp. Laws</u> §§
2  400.610a(1), <u>Massachusetts General Laws</u> Chapter 12, §§ 5C(2), <u>Maryland Code, Health</u>
3  <u>General</u> § 2-604(a)(1), and 740 <u>Illinois Comp. Stat.</u> § 175/4(b)(1), respectively. The
4  Government funds, pays for, partially funds or partially pays for various health insurance
5  programs, including but not limited to the Medicare and Medicaid programs, Champus, and
6  Federal Employees Health Benefits Insurance Plans. Each of the Certain States funds, pays
7  for, partially funds or partially pays for various health insurance programs, including but not
8  limited to the Medicaid program administered in each of such Certain States.

9    5.    Defendants Reckitt Benckiser Pharmaceuticals, Inc. and Reckitt Benckiser
10  (USA), Inc. (collectively, "Reckitt"), and MonoSol Rx, LLC (MonoSol) are, and at all times
11  mentioned were, corporations formed under the laws of the State of Delaware, and transacted
12  business in, among other places, the Central District of California.

13                              INTRODUCTION

14    6.    Buprenorphine, the active agent in Subutex and Suboxone to treat opioid
15  dependence, is a synthetic opioid. In appropriate situations, dosages, frequency and duration
16  of use, buprenorphine can reduce or remove an opioid dependent patient's craving for the
17  abused opioid drug. However, buprenorphine can also result in the patient being addicted to
18  buprenorphine when administered in the dosage amounts and duration recommended by
19  Reckitt.

20    7.    Reckitt obtained government approval to market and distribute buprenorphine,
21  formulated as Subutex and Suboxone, to treat patients with opioid dependence (i.e., addiction)
22  based upon studies concerning the treatment of intravenous drug abusers addicted to illicit
23  opioid drugs such as heroin. Reckitt marketed and promoted its products for the maintenance
24  treatment and detoxification of patients with opioid dependency.[1] Reckitt's labeling, such as
25  the Package Insert, of Subutex and Suboxone states that use of these medications are
26  appropriate for treatment of opioid dependence, but fails to differentiate the appropriate usage,

27

28  [1]As used herein, "opioid dependency" includes opioid addiction as well as physical dependence on an opioid.

-3-

1  dosage, frequency or duration of usage for treatment of patients dependent on intravenous
2  opioids, such as heroin, as compared to patients dependent on prescription opioids, such as
3  vicodin and oxycodone, in violation of, among other things, 21 U.S.C. § 352(f) and (j), and
4  21 C.F.R. 201.5. While such labeling recommends a usage, dosage, frequency and duration
5  of usage for treatment of patients that may be appropriate for intravenous drug addicts, such
6  recommended usage, dosage, frequency or duration of usage for treatment of patients is
7  excessive for the treatment of prescription opioid dependent patients because such
8  recommended administration can and does result in addiction to the buprenorphine in Subutex
9  and Suboxone. Such misbranding, as well as various misrepresentations and concealments by
10  Reckitt, resulted in a large number of patients with prescription opioid dependency being
11  treated with Subutex and/or Suboxone and becoming addicted to the buprenorphine in Subutex
12  and Suboxone.

13       8.    Reckitt marketed and promoted Subutex and Suboxone as being mildly if at all
14  addictive, and that withdrawal symptoms from such medications, if any, were mild as
15  compared to those of full agonist opioids. Reckitt made such misrepresentations as part of its
16  marketing and promotion of Subutex and/or Suboxone for detoxification therapy of opioid
17  dependency, which is an "off-label" use of these medications. In fact, administration of
18  Subutex or Suboxone in the dosage amounts and duration recommended by Reckitt can and
19  does result in addiction to the buprenorphine in such medications with withdrawal syndromes
20  (from being addicted to the buprenorphine in Subutex/Suboxone) as severe as, if not more
21  severe than, the withdrawal symptoms of the opioid drug that triggered the Subutex/Suboxone
22  therapy.

23       9.    As discussed below, defendants fraudulently induced treating physicians and
24  their patients to prescribe and utilize Suboxone and/or Subutex for off-label uses and/or
25  medically unnecessary uses or amounts, and caused hospitals, treating physicians, pharmacies
26  and their patients to bill the Government and Certain States for Suboxone and/or Subutex for
27  such improper uses and amounts.

28  ///

-4-

## COMMON ALLEGATIONS

10.     The pharmaceutical industry is highly regulated by the Food and Drug Administration (FDA). Pursuant to the Food, Drug and Cosmetics Act, 21 U.S.C. §§301, et seq., the FDA strictly regulates the content of consumer and physician based advertising, direct to physician product promotion, and drug labeling information used by pharmaceutical companies in promoting and selling FDA approved prescription drugs.

11.     Any presentations, promotions or marketing to physicians for products for use other than that approved for labeling purposes by the FDA is considered "off label" marketing and is thus prohibited by FDA regulation. Any failure to fairly and accurately present the required information about a prescription drug is considered misbranding and is a false and fraudulent statement as a matter of law. (See, 21 U.S.C. §§331(a) and (b), 352; 21 C.F.R. §§201.5, 201.57.)

12.     Pharmaceutical promotion and marketing materials and presentations lacking in fair balance or that are otherwise false and misleading violate the Food, Drug and Cosmetics Act, 21 U.S.C. §§301, et seq., and regulations promulgated thereunder. Such violations exist where promotion and marketing materials and presentations for an FDA approved drug:

    i.      Minimize, understate or misrepresent the risks, contra-indications and complications associated with that drug;

    ii.     Overstate or misrepresent the risks, contra-indications and complications associated with any competing drugs;

    iii.    Reference "off label" uses of the drug for which it was not an approved indication by the FDA, or expressly or impliedly promote unapproved uses and dosing regimens for which the drug is not indicated; or

    iv.     Are otherwise false, misleading or lacking in fair balance in the presentation of information about the drug being marketed or any competing drug.

13.     The Drug Addiction Treatment Act of 2000, Public Law 106-310, Section 3502, (DATA 2000) was passed to establish the regulation of healthcare providers and facilities

-5-

1     providing treatment for opioid addiction. With its passage, qualified physicians are able to
2     provide office-based treatment of opioid addiction through the administration of
3     buprenorphine, a Schedule III narcotic, which was formulated as Subutex and Suboxone by
4     Reckitt.

5          14.     Prior to DATA 2000's enactment, treatment for heroin addiction could only be
6     performed in stand-alone methadone clinics. After DATA 2000, qualified physicians were
7     initially licensed to administer Subutex and Suboxone to up to 30 patients, which can be
8     increased up to 100 patients per qualified physician after they had one year's experience with
9     administering Subutex and Suboxone.

10         15.     Reckitt was granted an orphan drug status for Subutex and Suboxone, resulting
11     in an additional two years of exclusivity to the drug, and is usually only granted when the total
12     number of potential patients is less then 250,000. Reckitt used projected data based solely on
13     potential intravenous opioid drug abusers to support its application and did not present any
14     evidence of the large number of patients with prescription opioid dependency who would
15     potentially receive Subutex and Suboxone therapy. In reality, prescription opioid dependency
16     patients, as opposed to intravenous drug abusers, are the predominate group of patients
17     receiving Subutex/Suboxone therapy.

18         16.     During or about 2002, Reckitt began marketing buprenorphine in the United
19     States under the names Subutex and Suboxone as sublingual tablets for the treatment of opioid
20     dependence. The tablets were manufactured in dosage amounts of 2 mg and 8 mg of
21     buprenorphine, with Suboxone containing small doses of Naloxone (.5 mg and 2 mg,
22     respectively) to deter Suboxone's abuse and diversion potential by intravenous drug users
23     when administered outside of an in-patient setting.

24         17.     Reckitt's initial national Subutex/Suboxone marketing campaigns used Medical
25     Thought Leaders (MTLs) to train a paid panel of Physician Treatment Advocates (PTAs). The
26     MTLs and PTAs were Reckitt's representatives and/or agents in defendants'
27     Subutex/Suboxone marketing campaign. The PTAs then repeated the MTLs' statements and
28     provided other Reckitt promotional materials to healthcare providers, including treating

1 physicians prescribing and administering Subutex and Suboxone, concerning the
2 characteristics, use, dosage, frequency and duration of treatment of Subutex and Suboxone.
3 PTAs received at least $500 for each talk they gave, whether in front of a large group of
4 healthcare providers or a one on one meeting with another physician or health care
5 professional.

6      18. The MTLs' lectures to the PTAs stressed, among other things, that (a) Subutex
7 and Suboxone are mildly if at all addictive, (b) Subutex and Suboxone cause less euphoria than
8 full agonist opioids and are thus less addictive, and (c) Subutex and/or Suboxone therapy could
9 be stopped abruptly without problem. In fact, each such representation was false and Reckitt
10 made these misrepresentations (and/or caused them to be made to treating healthcare
11 providers) knowing that they were false and misleading in spite of mounting evidence to the
12 contrary. Patients become addicted to Subutex and Suboxone easily after administration in the
13 dosage amount and duration recommended by Reckitt with withdrawal syndromes as severe,
14 if not more severe, than the withdrawal symptoms from the full agonist opioids. At all times
15 relevant, defendants knew, acted in deliberate ignorance, and/or acted in deliberate disregard,
16 of these facts, but intentionally refused and/or failed to advise physicians of same. These
17 statements were continuously made by Reckitt's MTLs in front of large audiences of PTAs
18 and other physicians licensed to prescribe Subutex and Suboxone. In turn, the PTAs repeated
19 these misstatements to treating physicians and other healthcare providers that prescribed or
20 administered Subutex and Suboxone, as well as to patients.

21      19. By misrepresenting that Subutex and Suboxone were mildly if at all addictive,
22 were less addictive than full agonist opioids, and/or that Subutex/Suboxone therapy could be
23 stopped abruptly without problem, Reckitt concealed the risks associated with such therapy.
24 Such misrepresentations and concealments resulted in the improper use, dosage, frequency
25 and/or duration of such therapy because treating physicians were unaware of the addictive
26 qualities of Subutex and Suboxone, particularly when administered in the dosage amount and
27 duration recommended by Reckitt and/or with patients with prescription opioid dependency.
28 Further, such misrepresentations concealed the risks of such therapy resulting in use of

-7-

1 Subutex and Suboxone without the patients' <u>informed</u> consent, given the addictive qualities
2 of Subutex and Suboxone. Such misrepresentations and concealments resulted in the improper
3 prescription and administration of Subutex and Suboxone that were not medically necessary.

4 <u>Misbranding</u>

5     20.   Reckitt's Package Insert for Subutex and Suboxone states that use of these
6 medications is appropriate for treatment of opioid dependence, but fails to differentiate the
7 appropriate usage, dosage, frequency or duration of usage for treatment of patients with
8 dependence to prescription opioids as compared to intravenous opioid addicts (the latter for
9 whom the dosages and durations where developed) in violation of, among other things, 21
10 U.S.C. § 352(f)(1) and (j), and 21 C.F.R. 201.5. While the Package Insert recommends a
11 usage, dosage, frequency or duration of usage for treatment of patients that may be appropriate
12 for intravenous heroin addicts, such recommended usage, dosage, frequency or duration of
13 usage is excessive for the treatment of prescription opioid dependency patients because such
14 recommended administration will result in prescribing opioids to those patients in greater
15 quantities than the opioids they were originally dependent upon, which results in addiction to
16 the buprenorphine in Suboxone and Subutex that is more profound than the dependence for
17 which treatment was sought. Such misbranding, as well as various misrepresentations and
18 concealments by Reckitt, resulted in a large number of prescription opioid dependency patients
19 being treated with Subutex and/or Suboxone and becoming addicted to the buprenorphine in
20 Subutex and Suboxone.

21     21.   As a result of Reckitt's misbranding and false statements, treating physicians
22 inappropriately administered Subutex and Suboxone to treat (a) patients with physical
23 dependency to opioids who were not opioid addicted, resulting in a large number of such
24 patients becoming addicted to the buprenorphine in Subutex and Suboxone, and (b)
25 prescription opioid addicted patients in a dosage, frequency or duration of usage for treatment
26 that was excessive for the treatment of prescription opioid addicted patients because such
27 recommended administration results (and resulted) in a large number of such patients
28 becoming addicted to the buprenorphine in Subutex and Suboxone. Reckitt thus caused

-8-

1  physicians, hospitals, pharmacies and patients to present false claims for payment to Medicare,

2  Medicaid, and other government funded health plans.

3  <u>Off Label Use - Detoxification</u>

4      22.    Reckitt and its representatives actively and continuously marketed and promoted

5  Suboxone and Subutex to physicians for detoxification treatment since the original release of

6  those medications (Reckitt stopped promoting Subutex for detoxification when Reckitt starting

7  marketing Suboxone film).  Reckitt was so effective in marketing Suboxone film for

8  detoxification treatment that it is the sole detoxification treatment that most private health

9  insurance carriers will authorize for detoxification treatment in Los Angeles and Orange

10 Counties.

11     23.    Initially, Reckitt instructed treating physicians to administer Subutex and

12 Suboxone for short term detoxification treatment (one or two weeks), and provided MTLs,

13 PTAs and prescribing physicians with detoxification treatment taper schedules.  Shortly

14 thereafter, Rickett's MTLs and pharmaceutical salespersons supplemented the short term

15 detoxification schedules with recommendations for long term detoxification and maintenance

16 treatment protocols for using Subutex and Suboxone to the PTAs (ostensibly to reduce

17 recidivism).  In turn, the PTAs repeated these long-term detoxification and maintenance

18 treatment protocols and representations to treating physicians and other healthcare providers

19 that prescribed or administered Subutex and Suboxone.

20     24.    At all times relevant, the FDA only approved Suboxone for maintenance

21 treatment and Subutex for induction and maintenance treatment, but did not approve either for

22 detoxification treatment as those terms are  defined by the Controlled Substances Act.  (See,

23 21 CFR § 1300.01(b).)

24     25.    In reliance upon defendants' false and fraudulent statements, treating physicians

25 prescribed and administered Subutex and Suboxone to opioid dependency patients for

26 detoxification treatment which is an "off label" use. Defendants thus caused physicians,

27 pharmacies, hospitals and patients to present false claims for payment to Medicare, Medicaid,

28 and other government funded health plans.

-9-

SECOND AMENDED COMPLAINT
CV12-8797 MMM(PLAx)

Off Label Use - Induction

26.    At all times relevant, the FDA approved Subutex for induction (introducing the patient to buprenorphine therapy) and maintenance therapy, and Suboxone for maintenance therapy only. Suboxone was not approved for induction.

27.    During or about 2009, Reckitt's orphan drug status expired and several other pharmaceutical manufacturers began producing and selling Subutex generically. Defendants responded by introducing a new Suboxone film that defendants claimed significantly deters potential abuse and diversion by intravenous drug users. The Suboxone film is in the same doses and amounts of Naloxone as the Suboxone sublingual tablets. Upon release of the Suboxone film, defendants changed their marketing strategy and discontinued manufacturing, selling or promoting Subutex.

28.    Since losing its orphan drug status, defendants' marketing and promotion has been that Subutex is too easily abused or diverted by opioid drug abusers to be ethically prescribed, should be illegal, and that only Suboxone film should be used for induction and maintenance treatment for opioid dependence. For instance, Dr. Mendelson, a Reckitt MTL member, strongly cautioned physicians that because of its potential for abuse, prescribing Subutex will result in increased scrutiny from the DEA and potential liability. Dr. Mendelson advised physicians and PTAs that because of the Subutex's abuse potential patients should be inducted directly on Suboxone. These statements contradict Reckitt's long standing Package Insert regarding this issue wherein it recommends inducting patients first on Subutex then moving them to Suboxone, as well as the fact that the FDA specifically only approved Suboxone for maintenance therapy, but not induction. These representations concerning the use of Suboxone film for induction were repeated by the PTAs to healthcare providers that prescribed and administered Suboxone film.

29.    In reliance upon defendants' statements during and after 2009, hospitals and treating physicians prescribed and administered Suboxone film (as opposed to Subutex or its generic equivalent) for induction treatment of patients, which is an "off label" use. Defendants thus caused physicians, pharmacies, hospitals and patients to present false claims for payment

-10-

1   to Medicare, Medicaid, and other government funded health plans.

2   Misbranding and Off-Label Use - Hospital In-Patient Treatment

3       30.     The Relator is informed and believes and thereupon alleges that Reckitt

4   marketed Suboxone film to hospitals nationwide for in-patient detoxification and maintenance

5   treatments. Reckitt represented to hospitals that they should only use Suboxone film, and not

6   use generic Subutex, for induction or for any other in-patient treatment because Subutex

7   purportedly poses too great a risk of abuse and diversion to safely administer to patients. For

8   instance, in attempting to market Suboxone film to the Lakewood Regional Medical Center

9   (a hospital owned by national hospital chain Tenet Hospitals), Reckitt informed the hospital

10  pharmacist that St. Jude Hospital System (headquartered in neighboring Orange County) was

11  using Suboxone film exclusively because of its purported lower risk for abuse and diversion

12  as compared to Subutex.

13      31.     The true facts are that when patients are admitted to hospitals for in-patient

14  opioid dependence detoxification and/or maintenance treatments, there is no risk that such

15  patients will abuse or divert Subutex, and therefore there is no legitimate reason to administer

16  the more costly Suboxone (which contains Naloxone) as compared to generic Subutex. There

17  is no risk that patients can divert generic Subutex administered to them in an in-patient setting

18  because the hospital staff is present when the patients are administered the dose.

19      32.     Reckitt's false statements regarding the purported risk of using Subutex for in-

20  patient treatment of opioid dependency resulted, and continue to result, in hospitals

21  administering the more expensive Suboxone film to hospital patients, some of whom were and

22  are beneficiaries under the Medicare and Medicaid programs, and/or other government funded

23  health plans.

24  False and Fraudulent Statements

25      33.     In reliance upon defendants' false and fraudulent statements, treating physicians

26  prescribed and administered Subutex and Suboxone to treat their patients, without disclosure

27  to such patients of the addictive effects of such medications in the dosage amount and duration

28  recommended by defendants. Defendants thus caused physicians, hospitals, pharmacies and

-11-

1    patients to present false claims for payment to Medicare, Medicaid, and other government

2    funded health plans.

3         34.    As a result of defendants' misrepresentations and concealments, hospitals and

4    treating physicians (a) inappropriately administered Subutex and Suboxone to treat

5    prescription opioid dependency patients resulting in a large number of such patients becoming

6    addicted to the buprenorphine in Subutex and Suboxone, (b) administered Suboxone for

7    induction therapy, and/or (c) administered Subutex and/or Suboxone for detoxification. As

8    a result of such misrepresentations and concealments, defendants caused physicians, hospitals,

9    pharmacies and patients to present false claims for payment to Medicare, Medicaid, and other

10   government funded health plans.

11        35.    In reliance upon defendants' statements during and after 2009, treating

12   physicians prescribed and administered Suboxone film (as opposed to Subutex or its generic

13   equivalent) for the induction treatment of patients, a use for which it is not approved by the

14   FDA. Defendants thus caused physicians, hospitals, pharmacies and patients to present false

15   claims for payment to Medicare, Medicaid, and other government funded health plans.

16

17                              FIRST CLAIM FOR RELIEF

18        (Violations of the False Claims Act, 31 U.S.C. § 3729(a) against all defendants)

19        36.    Relator realleges and incorporates by reference the allegations contained in

20   paragraphs 1 through 35 of this complaint.

21        37.    By virtue of the conduct, misrepresentations, concealments described above,

22   defendants knowingly presented, or caused to be presented, to the Government false and

23   fraudulent claims for payment or approval of prescriptions for uses of Subutex and Suboxone.

24        38.    By virtue of the conduct, misrepresentations, concealments described above,

25   defendants knowingly made, used, or caused to be made or used, false records or statements

26   material to said false or fraudulent claims.

27        39.    Defendants conspired among themselves, and with others, to commit the above

28   described acts.

                                      -12-

40.     The Government and the Certain States, unaware of the falsity or fraudulent nature of the claims that defendants caused to be presented, paid for claims that would otherwise not have been allowed.

41.     As a result of the defendants' conduct, defendants are liable to the Government for three times the amount of damages sustained by the Government as a result of the false and fraudulent practices alleged above.

42.     As a result of defendants' conduct, defendants are liable to the Government for civil penalties between $5,000 and $10,000 for each such false and fraudulent claim, statement or act.

43.     Relator is also entitled to recover his attorneys fees, costs and expenses from the defendants, and each of them, pursuant to 31 U.S.C. § 3730(d).

## SECOND CLAIM FOR RELIEF

(Violation of <u>California Government Code</u> § 12651(a) against all defendants)

44.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 35 of this complaint.

45.     By virtue of the conduct, misrepresentations, concealments described above, defendants knowingly presented, or caused to be presented to California false and fraudulent claims for payment or approval of prescriptions for uses of Subutex and Suboxone.

46.     By virtue of the conduct, misrepresentations, concealments described above, defendants knowingly made, used, or caused to be made or used, false records or statements material to said false or fraudulent claims.

47.     Defendants conspired among themselves, and with others, to commit the above described acts.

48.     California, unaware of the falsity or fraudulent nature of the claims that defendants caused to be presented, paid for claims that would otherwise not have been allowed.

49.     As a result of the defendants' conduct, defendants are liable to California for

-13-

1  three times the amount of damages sustained by California as a result of the false and
2  fraudulent practices alleged above.

3      50.    As a result of defendants' conduct, <u>California Government Code</u> §1265 (a)
4  provides that defendants are liable to California for civil penalties of up to $10,000 for each
5  such false and fraudulent claim, statement or act.

6      51.    Relator is also entitled to recover his attorneys fees, costs and expenses from
7  defendants, and each of them, pursuant to <u>California Government Code</u> § 12652(g)(8).

8

9                    <u>THIRD CLAIM FOR RELIEF</u>

10     (Violation of <u>New York State Finance Law</u> § 189(1) against all defendants)

11     52.    Relator realleges and incorporates by reference the allegations contained in
12  paragraphs 1 through 35 of this complaint.

13     53.    By virtue of the conduct, misrepresentations, concealments described above,
14  defendants knowingly presented, or caused to be presented to New York false and fraudulent
15  claims for payment or approval of prescriptions for uses of Subutex and Suboxone.

16     54.    By virtue of the conduct, misrepresentations, concealments described above,
17  defendants knowingly made, used, or caused to be made or used, false records or statements
18  material to said false or fraudulent claims.

19     55.    Defendants conspired among themselves, and with others, to commit the above
20  described acts.

21     56.    New York, unaware of the falsity or fraudulent nature of the claims that
22  defendants caused to be presented, paid for claims that would otherwise not have been
23  allowed.

24     57.    As a result of the defendants' conduct, defendants are liable to New York for
25  three times the amount of damages sustained by New York as a result of the false and
26  fraudulent practices alleged above.

27     58.    As a result of defendants' conduct, <u>New York State Finance Law</u> § 189(1)(g)
28  provides that defendants are liable to New York for civil penalties of up to $12,000 for each

-14-

1    such false and fraudulent claim, statement or act.

2        59.    Relator is also entitled to recover his attorneys fees, costs and expenses from

3    defendants, and each of them, pursuant to New York State Finance Law § 190(7).

4

5                    FOURTH CLAIM FOR RELIEF

6        (Violation of New Jersey Statutes Annotated § 2A:32C-3 against all defendants)

7        60.    Relator realleges and incorporates by reference the allegations contained in

8    paragraphs 1 through 35 of this complaint.

9        61.    By virtue of the conduct, misrepresentations, concealments described above,

10   defendants knowingly presented, or caused to be presented to New Jersey false and fraudulent

11   claims for payment or approval of prescriptions for uses of Subutex and Suboxone.

12       62.    By virtue of the conduct, misrepresentations, concealments described above,

13   defendants knowingly made, used, or caused to be made or used, false records or statements

14   material to said false or fraudulent claims.

15       63.    Defendants conspired among themselves, and with others, to commit the above

16   described acts.

17       64.    New Jersey, unaware of the falsity or fraudulent nature of the claims that

18   defendants caused to be presented, paid for claims that would otherwise not have been

19   allowed.

20       65.    As a result of the defendants' conduct, defendants are liable to New Jersey for

21   three times the amount of damages sustained by New Jersey as a result of the false and

22   fraudulent practices alleged above.

23       66.    As a result of defendants' conduct, N.J.S.A § 2A:32C-3 provides that defendants

24   are liable to New Jersey for civil penalties of up to $10,000 for each such false and fraudulent

25   claim, statement or act.

26       67.    Relator is also entitled to recover his attorneys fees, costs and expenses from

27   defendants, and each of them, pursuant to N.J.S.A. § 2A:32C-8.

28

-15-

Case 1:14-cv-00059-JPJ-PMS   Document 23-18   Filed 08/27/14   Page 16 of 23   Pageid#: 132

FIFTH CLAIM FOR RELIEF

(Violation of <u>Florida Statutes</u> § 68.082(2) against all defendants)

68.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 35 of this complaint.

69.     By virtue of the conduct, misrepresentations, concealments described above, defendants knowingly presented, or caused to be presented to Florida false and fraudulent claims for payment or approval of prescriptions for uses of Subutex and Suboxone.

70.     By virtue of the conduct, misrepresentations, concealments described above, defendants knowingly made, used, or caused to be made or used, false records or statements material to said false or fraudulent claims.

71.     Defendants conspired among themselves, and with others, to commit the above described acts.

72.     Florida, unaware of the falsity or fraudulent nature of the claims that defendants caused to be presented, paid for claims that would otherwise not have been allowed.

73.     As a result of the defendants' conduct, defendants are liable to Florida for three times the amount of damages sustained by Florida as a result of the false and fraudulent practices alleged above.

74.     As a result of defendants' conduct, <u>Florida Statutes</u> § 68.082(2) provides that defendants are liable to Florida for civil penalties of up to $11,000 for each such false and fraudulent claim, statement or act.

75.     Relator is also entitled to recover his attorneys fees, costs and expenses from defendants, and each of them, pursuant to <u>Florida Statutes</u> § 68.086.


SIXTH CLAIM FOR RELIEF

(Violation of <u>Texas Human Resources Code</u> § 36.002 against all defendants)

76.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 35 of this complaint.

77.     By virtue of the conduct, misrepresentations, concealments described above,

-16-

1    defendants knowingly presented, or caused to be presented to Texas false and fraudulent

2    claims for payment or approval of prescriptions for uses of Subutex and Suboxone.

3         78.     By virtue of the conduct, misrepresentations, concealments described above,

4    defendants knowingly made, used, or caused to be made or used, false records or statements

5    material to said false or fraudulent claims.

6         79.     Defendants conspired among themselves, and with others, to commit the above

7    described acts.

8         80.     Texas, unaware of the falsity or fraudulent nature of the claims that defendants

9    caused to be presented, paid for claims that would otherwise not have been allowed.

10        81.     As a result of the defendants' conduct, defendants are liable to Texas for two

11   times the amount of damages sustained by Texas as a result of the false and fraudulent

12   practices alleged above.

13        82.     As a result of defendants' conduct, <u>Texas Human Resources Code</u> § 36.052(a)(3)

14   provides that defendants are liable to Texas for civil penalties of up to $15,000 for each such

15   false and fraudulent claim, statement or act.

16        83.     Relator is also entitled to recover his attorneys fees, costs and expenses from

17   defendants, and each of them, pursuant to <u>Texas Human Resources Code</u> § 36.110(c).

18

19                          <u>SEVENTH CLAIM FOR RELIEF</u>

20        (Violation of <u>Michigan Comp. Laws</u> §§ 400.603 and 400.607 against all defendants)

21        84.     Relator realleges and incorporates by reference the allegations contained in

22   paragraphs 1 through 35 of this complaint.

23        85.     By virtue of the conduct, misrepresentations, concealments described above,

24   defendants knowingly presented, or caused to be presented to Michigan false and fraudulent

25   claims for payment or approval of prescriptions for uses of Subutex and Suboxone.

26        86.     By virtue of the conduct, misrepresentations, concealments described above,

27   defendants knowingly made, used, or caused to be made or used, false records or statements

28   material to said false or fraudulent claims.

-17-

SECOND AMENDED COMPLAINT
CV12-8797 MMM(PLAx)

87.     Defendants conspired among themselves, and with others, to commit the above described acts.

88.     Michigan, unaware of the falsity or fraudulent nature of the claims that defendants caused to be presented, paid for claims that would otherwise not have been allowed.

89.     As a result of the defendants' conduct, defendants are liable to Michigan for three times the amount of damages sustained by Michigan as a result of the false and fraudulent practices alleged above.

90.     As a result of defendants' conduct, <u>Michigan Comp. Laws</u> § 400.612(1) provides that defendants are liable to Michigan for civil penalties of up to $10,000 for each such false and fraudulent claim, statement or act.

91.     Relator is also entitled to recover his attorneys fees, costs and expenses from defendants, and each of them, pursuant to <u>Michigan Comp. Laws</u> § 400.610a(9).

<u>EIGHTH CLAIM FOR RELIEF</u>

(Violation of <u>Massachusetts General Laws</u> Chapter 12, § 5B against all defendants)

92.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 35 of this complaint.

93.     By virtue of the conduct, misrepresentations, concealments described above, defendants knowingly presented, or caused to be presented to Massachusetts false and fraudulent claims for payment or approval of prescriptions for uses of Subutex and Suboxone.

94.     By virtue of the conduct, misrepresentations, concealments described above, defendants knowingly made, used, or caused to be made or used, false records or statements material to said false or fraudulent claims.

95.     Defendants conspired among themselves, and with others, to commit the above described acts.

96.     Massachusetts, unaware of the falsity or fraudulent nature of the claims that defendants caused to be presented, paid for claims that would otherwise not have been

-18-

Case 1:14-cv-00059-JPJ-PMS   Document 23-18   Filed 08/27/14   Page 19 of 23   Pageid#: 135

1    allowed.

2        97.    As a result of the defendants' conduct, defendants are liable to Massachusetts

3    for three times the amount of damages sustained by Massachusetts as a result of the false and

4    fraudulent practices alleged above.

5        98.    As a result of defendants' conduct, Massachusetts General Laws Chapter 12, §

6    5B(9) provides that defendants are liable to Massachusetts for civil penalties of up to $10,000

7    for each such false and fraudulent claim, statement or act.

8        99.    Relator is also entitled to recover his attorneys fees, costs and expenses from

9    defendants, and each of them, pursuant to Massachusetts General Laws Chapter 12, § 5F.

10

11                          NINTH CLAIM FOR RELIEF

12        (Violation of Maryland Code, Health General § 2-602(a) against all defendants)

13        100.   Relator realleges and incorporates by reference the allegations contained in

14    paragraphs 1 through 35 of this complaint.

15        101.   By virtue of the conduct, misrepresentations, concealments described above,

16    defendants knowingly presented, or caused to be presented to Maryland false and fraudulent

17    claims for payment or approval of prescriptions for uses of Subutex and Suboxone.

18        102.   By virtue of the conduct, misrepresentations, concealments described above,

19    defendants knowingly made, used, or caused to be made or used, false records or statements

20    material to said false or fraudulent claims.

21        103.   Defendants conspired among themselves, and with others, to commit the above

22    described acts.

23        104.   Maryland, unaware of the falsity or fraudulent nature of the claims that

24    defendants caused to be presented, paid for claims that would otherwise not have been

25    allowed.

26        105.   As a result of the defendants' conduct, defendants are liable to Maryland for

27    three times the amount of damages sustained by Maryland as a result of the false and

28    fraudulent practices alleged above.

-19-

Case 1:14-cv-00059-JPJ-PMS   Document 23-18   Filed 08/27/14   Page 20 of 23   Pageid#: 136

106. As a result of defendants' conduct, <u>Maryland Code, Health General</u> § 2-602(b)(1)(I) provides that defendants are liable to Maryland for civil penalties of up to $10,000 for each such false and fraudulent claim, statement or act.

107. Relator is also entitled to recover his attorneys fees, costs and expenses from defendants, and each of them, pursuant to <u>Maryland Code, Health General</u> § 2-604(a)(2)(ii).

## TENTH CLAIM FOR RELIEF

(Violation of 740 <u>Illinois Comp. Stat.</u> § 175/3 against all defendants)

108. Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 35 of this complaint.

109. By virtue of the conduct, misrepresentations, concealments described above, defendants knowingly presented, or caused to be presented to Illinois false and fraudulent claims for payment or approval of prescriptions for uses of Subutex and Suboxone.

110. By virtue of the conduct, misrepresentations, concealments described above, defendants knowingly made, used, or caused to be made or used, false records or statements material to said false or fraudulent claims.

111. Defendants conspired among themselves, and with others, to commit the above described acts.

112. Illinois, unaware of the falsity or fraudulent nature of the claims that defendants caused to be presented, paid for claims that would otherwise not have been allowed.

113. As a result of the defendants' conduct, defendants are liable to Illinois for three times the amount of damages sustained by Illinois as a result of the false and fraudulent practices alleged above.

114. As a result of defendants' conduct, 740 <u>Illinois Comp. Stat.</u> § 175/3(a)(1)(G) provides that defendants are liable to Illinois for civil penalties of up to $11,000 for each such false and fraudulent claim, statement or act.

115. Relator is also entitled to recover his attorneys fees, costs and expenses from defendants, and each of them, pursuant to 740 <u>Illinois Comp. Stat.</u> § 175/4(d).

-20-

Case 1:14-cv-00059-JPJ-PMS Document 23-18 Filed 08/27/14 Page 21 of 23 Pageid#: 137

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for relief against the defendants, and each of them, as follows:

1.    Treble the damages of the Government and the Certain States according to proof;

2.    Civil penalties according to proof;

3.    A relator's award measured as a percentage of the amounts recovered by or on behalf of the Government and the Certain States in an amount according to proof;

4.    Attorney's fees, expenses, and costs; and

5.    Such other and further relief as the Court deems just and proper.

THE ZINBERG LAW FIRM
A Professional Corporation

THE HANAGAMI LAW FIRM
A Professional Corporation

Dated: July 8, 2013        By: _____
William K. Hanagami
Attorneys for Plaintiff and Qui Tam Relator

## REQUEST FOR JURY TRIAL

Plaintiff and Qui Tam Relator hereby requests a trial by jury.

THE ZINBERG LAW FIRM
A Professional Corporation

THE HANAGAMI LAW FIRM
A Professional Corporation

Dated: July 8, 2013        By: _____
William K. Hanagami
Attorneys for Plaintiff and Qui Tam Relator

Complaint.P03.wpd

-21-

1                                         __PROOF OF SERVICE__

2 STATE OF CALIFORNIA         )
                                     )

3 COUNTY OF LOS ANGELES    )

4       I, the undersigned, certify and declare that I am over the age of 18 years, employed in the

5 County of Los Angeles, State of California, and not a party to the above-entitled cause.

6       On January 8, 2014, I served a true copy of:

7 **SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE**
8 **CLAIMS ACT, CALIFORNIA FALSE CLAIMS ACT, NEW YORK FALSE CLAIMS ACT,**
**NEW JERSEY FALSE CLAIMS ACT, FLORIDA FALSE CLAIMS ACT, TEXAS FALSE**
**CLAIMS ACT, MICHIGAN FALSE CLAIMS ACT, MASSACHUSETTS FALSE CLAIMS**
9 **ACT, MARYLAND FALSE CLAIMS ACT, ILLINOIS FALSE CLAIMS ACT; REQUEST**
10 **FOR JURY TRIAL.**

11 by depositing it in the United States Mail at Woodland Hills, California in a sealed envelope with

12 the postage thereon fully prepaid addressed to the following:

13 Shana T. Mintz                                Attorneys for United States of America
OFFICE OF
14 THE UNITED STATES ATTORNEY
300 N. Los Angeles Street, Room 7516
15 Los Angeles, CA 90012

16 Emmanuel R. Salazar                        Attorneys for State of California
CALIFORNIA DEPARTMENT OF JUSTICE
17 Bureau of Medi-Cal Fraud and Elder Abuse
1425 River Park Drive, Suite 300
18 Sacramento, CA 95815-4524

19 Abram J. Zinberg                             Co-Counsel for Relator
THE ZINBERG LAW FIRM, A.P.C.
20 412 Olive Avenue, Suite 528
Huntington Beach, CA 92648

21       Executed on January 8, 2014 at Woodland Hills, California.

22       I hereby certify that I am a member of the Bar of the United States District Court, Central

23 District of California.

24       I hereby certify under the penalty of perjury that the foregoing is true and correct.

25

26                                     William K. Hanagami

27

28